UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **BLAKE HOWELL,**  *Plaintiff,*  v.  **NEWELL BRANDS INDUSTRIES, LLC,**  and  **SPHERION STAFFING, LLC,**  *Defendants.* | CIVIL ACTION NO.: 3:23-cv-00379  JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW Plaintiff, Blake Howell ("Mr. Howell") and files this Complaint against Defendants, Newell Brands Industries, LLC ("Newell") and Spherion Staffing, LLC ("Spherion") (collectively "Defendants"). Mr. Howell brings claims against Defendants for disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") 42 U.S.C § 12101 *et seq.*

### JURISDICTION AND VENUE

1. Federal question subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; 42 U.S.C. § 1988; and 42 U.S.C. § 12117(a).

2. The Court has personal jurisdiction over Defendants as Defendants conduct business throughout this judicial district.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. The acts and omissions alleged herein occurred within this judicial district.

1

## PARTIES

4. Plaintiff, Mr. Blake Howell, currently resides in Woodbridge, Virginia. Defendants employed Plaintiff from November 10, 2021, to February 7, 2022.

5. Defendant Newell Brands Industries, LLC is a Georgia limited liability company. Newell operates production facilities across the country which manufacture consumer goods. The Newell facility in Winchester, Virginia manufactures Rubbermaid products.

6. Defendant Spherion Staffing, LLC is a Florida limited liability company. Spherion is a staffing agency that recruits and hires temporary employees to work at various companies throughout the United States.

7. Spherion hired Mr. Howell to work at Newell's Rubbermaid production facility in Winchester, Virginia. Spherion onboarded and paid Mr. Howell; Newell oversaw Mr. Howell's schedule, work tasks, and performance. Spherion and Newell are joint employers.

## ADMINISTRATIVE REMEDIES

8. Mr. Howell filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 2, 2022, alleging that Defendants discriminated against him on the basis of his disability and retaliated against him for engaging in protected activity.  (**Exhibit A**, EEOC Charge).

9. After more than 180 days, the EEOC issued Mr. Howell a Right to Sue Letter on June 8, 2023. (**Exhibit B**, Notice of Right Sue).

10. Mr. Howell has satisfied all administrative prerequisites to bring this action.

## STATEMENT OF FACTS

### Mr. Howell's Physical Disabilities and Right Arm Mobility Limitations

11. Mr. Howell was injured in 2009 after he suffered a fall and was in a coma for eleven

(11) days. Doctors inserted metal into both of his wrists, his right elbow, and his right hip. He suffered a pierced lung, two collapsed lungs, a lacerated liver, damage to his right eye, and a traumatic brain injury.

12. Mr. Howell cannot extend his right elbow beyond a ninety-degree (90°) angle. Mr. Howell's right arm is scarred, and the physical limitations of his right arm are evident to anyone who sees him. Despite his limited arm mobility, he can still lift fifty (50) pounds using both arms.

13. Mr. Howell was approved for Supplemental Security Income (SSI) due to his injuries and began receiving SSI in 2015.

### Spherion Hired Mr. Howell to Work at Newell In The Miscellaneous II Department

14. In November 2021, Mr. Howell applied in-person for employment with the staffing agency, Spherion.

15. Spherion assigned Mr. Howell to work at the Newell factory in Winchester, Virginia which manufactures Rubbermaid products, beginning on November 10, 2021.

16. On November 10, 2021, Newell gave new hires a tour of the production facility and allowed the temporary employees to choose the department where they were assigned.

17. Mr. Howell showed the tour guide his arm and mobility limitations and asked the tour guide about which production department would be best for him.

18. Mr. Howell asked to be assigned to the Miscellaneous I department because that department required the least heavy lifting. Newell denied Mr. Howell's request to be assigned to the Miscellaneous I department, stating that the department was full.

19. As his second choice, Mr. Howell asked to be assigned to the Miscellaneous II department because, except for the Miscellaneous I department, it required the least heavy lifting.

20. Newell assigned Mr. Howell to the Miscellaneous II department.

## Mr. Howell's Rotation In The Miscellaneous II Department

21. The Miscellaneous II department manufactured approximately eight (8) small, plastic items. Based on Mr. Howell's best recollection, below is a list of the products manufactured and the tasks required to be performed for each product in the Miscellaneous II department during Mr. Howell's employment with Defendants:

| **Products:** | **Tasks**: |
|---|---|
| 3.5 Gallon Waste Basket | Task: hot stamp[1] (Mr. Howell could perform) |
| 10 Gallon Waste Basket | Task: hot stamp (Mr. Howell could perform) |
| 10- or 20-Gallon Brute Trashcan | Task: hot stamp (Mr. Howell could perform) |
| 55 Gallon Brute Trashcan Lid | Task: package (Mr. Howell could perform) |
| Accordion Barrier | Tasks: 3–4-person job (Mr. Howell could perform any station on the machine) |
| Slim Jim Trashcan | 2-person job<br>Task: hot stamp (Mr. Howell could perform)<br>Task: package (Mr. Howell could not perform) |
| Wet Floor Sign | Task: assemble (Mr. Howell could not perform) |
| Circular Step Stool | Task: assemble (Mr. Howell could not perform) |

22. Some of the machines in the Miscellaneous II department required 2-4 employees at one time. Additionally, some machines required one (1) employee if the product were being manufactured on a machine with a robotic hot stamp, or two (2) employees if the product were being manufactured on a machine without robotic stamping—which required hot stamping by a human. Whether robots or humans were used for certain tasks varied from shift to shift.

---

[1] "Hot stamping" is a process where a hot label or sticker is affixed to a plastic item. Once the sticker cools to room temperature, it is permanently affixed to the plastic.

23. For example, if the "Slim Jim" trashcans were being manufactured using a robot to hot stamp, Mr. Howell could not work on the "Slim Jim" production because the trashcans were too large for him to lift and stack after the robot did the hot stamping--given his mobility limitations. If the "Slim Jims" were being produced without a robot, however, Mr. Howell could hot stamp the "Slim Jims" and another employee could lift and stack the trashcans.

24. During each shift, the Miscellaneous II department had approximately 12-15 employees who rotated between the various production machines.

25. Employee rotations in the Miscellaneous II department were flexible and controlled by the Shift Team Leader. Team Leaders had discretion to rotate employees where they saw fit, depending on each employee's skills and abilities, the production set up, and needs of the department. Team Leaders also rotated and balanced employees to account for breaks, sometimes asking employees to work two machines at once to keep production going while other employees took breaks.

26. During November and December 2021, Mr. Howell's Team Leader accommodated his physical disability by primarily rotating him between the 3.5 Gallon Waste Baskets, 10 Gallon Waste Baskets, the 10/20 Gallon Brute Trashcans, and the 55 Gallon Brute Trashcan lids.

27. Rotating Mr. Howell between the tasks he could perform did not prohibit other Miscellaneous II department employees from rotating on the production machines in the department.

28. Newell has no requirement that every employee be able to rotate to every machine in the department. For example, in addition to Mr. Howell, several employees could not manufacture the wet floor signs or circular step stools due to their skill level or speed. The Team Leader accommodated for this variation in the production rotations.

29. Mr. Howell was an outstanding employee and no one from Newell or Spherion ever suggested his work product was lacking or otherwise deficient.

30. Neither Newell nor Spherion ever issued Mr. Howell any write-ups, warnings, or disciplinary actions.

31. Defendants asked Mr. Howell to work significant amounts of overtime, up to seventy-two (72) hours per week.

### Mr. Howell Reports Team Leader Laura Barker's Discriminatory Insults

32. When Mr. Howell began working for Defendants, he was assigned to the C Shift (6 a.m. to 6 p.m.). The C Shift Team Leader for the Miscellaneous II department was Laura Barker and the Supervisor for the department was Jerri Twigg.

33. During November and December 2021, Ms. Barker called Mr. Howell a "cry baby" and accused him of being "lazy."

34. Ms. Barker also yelled at Mr. Howell, "If you can't work this department, you need to leave this department!"

35. In December 2021, Mr. Howell filed an Incident Report with Newell documenting Ms. Barker's offensive outbursts.

36. Newell never interviewed Mr. Howell about his complaints and never reported any investigation findings to Mr. Howell.

### Defendants Revoked Mr. Howell's Accommodation

37. On approximately January 23rd or 24th, 2022, Ms. Twigg asked Mr. Howell in person for a doctor's note documenting his disabilities "because people are complaining about you being on easier machines and having to rotate around you."

38. On January 25, 2022, Laura Ingram (Rubbermaid On-Site Representative

6

employed by Spherion) emailed Mr. Howell stating, "Please call I need to speak to you." During this telephone call on January 25, 2022, Ms. Ingram reiterated Ms. Twigg's request that Mr. Howell provide a doctor's note recording his disabilities.

39. On January 26, 2022, Mr. Howell forwarded his Social Security Disability paperwork to Ms. Twigg and Ms. Ingram. Ms. Ingram said the disability paperwork was inadequate and asked Mr. Howell to obtain a new doctor's note. Ms. Ingram required Mr. Howell to stay home indefinitely until the accommodation paperwork was finalized.

40. On January 29, 2022, Mr. Howell submitted a doctor's note from Dr. Alexis McCabe at Winchester Medical Center Emergency Department to Ms. Ingram.

41. On January 31, 2022, Ms. Ingram provided Mr. Howell with disability accommodation request paperwork which Mr. Howell was required to return within seven (7) days.

42. On February 4, 2022, Mr. Howell submitted the accommodation request forms completed by his physician to Ms. Ingram.

### **Defendants Received Mr. Howell's Accommodation Request, Denied His Request, and Terminated Him Within Four (4) Hours**

43. At 7:56 a.m. on February 7, 2022, Ms. Ingram emailed Mr. Howell stating, "we received the forms. I am waiting to hear back now. I will update you shortly."

44. After confirming via email to Mr. Howell the receipt of the accommodation paperwork, Ms. Ingram called Mr. Howell and said, "Rubbermaid no longer wants to accommodate your disability. We can offer you other positions."

45. At 11:43 a.m. on February 7, 2023, Mr. Howell sent a confirmation email to Ms. Ingram which stated, "Per our discussion this morning. Rubbermaid will not accommodate my disability."

### **Defendants did not Terminate Other Employees Who Could Not Rotate to 100% of the Miscellaneous II Department Machines**

46. In addition to Mr. Howell, other employees in the Miscellaneous II department could not rotate to every machine in the department.

47. For example, a woman named Rona (age 55+) could not perform many of the tasks in the Miscellaneous II Department due to her age. Like Mr. Howell, Rona moved slower than other employees and could not work on the wet floor sign or circular step stool machines.

48. Rona does not display any physical disabilities and to Mr. Howell's knowledge, she is not disabled and never requested a reasonable accommodation.

49. Defendants did not require Rona or other non-disabled employees to rotate to 100% of a department's machines.

50. Defendants did not terminate Rona for her inability to rotate; Rona is still employed by Defendants as of the date of this filing.

### **Spherion Did Not Offer Mr. Howell Any Other Viable Employment Opportunities**

51. Due to his disabilities and medications, Mr. Howell cannot drive a car and does not have a driver's license.

52. Mr. Howell can only travel to work via foot or public transit.

53. After removing Mr. Howell from his Newell assignment, Spherion discussed other potential job offers with Mr. Howell, but they were all either out of walking distance or otherwise unavailable to him.

54. Spherion failed to offer Mr. Howell another job which he could accept and instead summarily terminated his employment.

## COUNT I
## DISABILITY DISCRIMINATION
## AGAINST BOTH DEFENDANTS
## [ADA, 42 U.S. Code § 12101 *et seq.*]

55. Mr. Howell incorporates by reference paragraphs 11 to 54 above.

56. The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to … the hiring, advancement, or discharge of employees, … and other terms, conditions, and privileges of employment." 42 U.S. Code § 12112(a).

57. To establish a claim for disability discrimination under the ADA, a plaintiff must prove (1) that he has a disability, (2) that he is a 'qualified individual' for the employment in question, and (3) that the employer discharged him because of his disability. *Jacobs v. North Carolina Admin. Off. of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015).

58. Mr. Howell is a person with a disability. Mr. Howell's right arm mobility is a physical impairment that substantially limits one or more major life activities, including lifting, pulling, pushing, and using his right arm.

59. In addition to being actually disabled, Mr. Howell has a record of disability and was perceived as disabled.

60. Mr. Howell has a record of being disabled: in 2015 the Social Security Administration awarded Mr. Howell Supplemental Income based on his physical and mental disabilities. Mr. Howell's medical records from his 2009 accident also confirm his disabilities.

61. Mr. Howell was perceived as disabled by Spherion and Newell's management who saw his physical limitations, discussed his disabilities with him, reviewed his accommodation requests and paperwork, and mocked his physical disability.

62. Mr. Howell is a qualified person with a disability and performed his job in line with his employers' reasonable expectations.

63. Mr. Howell worked for approximately three (3) months at the Newell Rubbermaid plant and was a successful and productive employee.

64. Defendants never issued Mr. Howell any write-ups, warnings, reprimands, or other disciplinary actions.

65. Mr. Howell was able to perform the essential functions of his job and could perform the majority of the machine functions in the Miscellaneous II department during his employment.

66. Defendants repeatedly asked Mr. Howell to work large amounts of overtime, up to seventy-two (72) hours per week.

67. Mr. Howell's direct supervisor, Ms. Barker, repeatedly mocked Mr. Howell because of his disability, calling him "lazy," and "cry baby," and accused him of being unable to do his job.

68. Defendants terminated Mr. Howell's employment because of his disability.

69. Defendants did not terminate non-disabled employees who were unable to rotate to every machine in the department.

70. Defendants told Mr. Howell verbatim that he was being terminated because Newell did not want to accommodate him; this is blatant disability discrimination.

71. As an actual and proximate cause of Defendants' conduct, Mr. Howell has suffered physical injury, emotional distress, embarrassment, humiliation, and lost wages and benefits.

72. Due to Defendants' intentional disregard of Mr. Howell's federally protected rights under the ADA, Mr. Howell seeks nominal, compensatory, and punitive damages to compensate him for harm inflicted by Defendants. Mr. Howell seeks backpay with pre- and post-judgment

interest, front pay, reimbursement for lost benefits, compensation for emotional distress, and repayment of his attorneys' fees and litigation costs and expenses.

## COUNT II
## RETALIATION AGAINST BOTH DEFENDANTS
## [ADA, 42 U.S. Code § 12101 *et seq.*]

73. Mr. Howell incorporates by reference paragraphs 11 to 54 above.

74. The ADA states that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

75. Mr. Howell engaged in protected activity by complaining about disability discrimination (a practice made unlawful by the ADA).

76. In December 2021, Mr. Howell complained to Defendants about Ms. Barker's demeaning and inappropriate insults about his disabilities.

77. In January 2022, Defendants revoked Mr. Howell's previous accommodation and sent him home from work without pay.

78. In February 2022, Defendants terminated Mr. Howell.

79. Defendants subjected Mr. Howell to an adverse employment action by revoking his accommodation, sending him home from work without pay, and terminating him.

80. Mr. Howell's protected activity and Defendants' adverse employment action were causally connected and not wholly unrelated.

81. Defendants terminated Mr. Howell because of his protected activity.

82. Prior to engaging in protected activity in December 2021, Mr. Howell was a productive and successful employee.

83. Only after Mr. Howell engaged in protected activity did Defendants strip him of his accommodation, interfere with his rights under the ADA by requiring him to provide three (3) superfluous rounds of doctors' notes and paperwork, send him home from work without pay while waiting for the additional paperwork, refuse to engage with him in the interactive process, and terminate him.

84. As an actual and proximate cause of Defendants' conduct, Mr. Howell has suffered physical injury, emotional distress, embarrassment, humiliation, and lost wages and benefits.

85. Due to Defendants' intentional disregard of Mr. Howell's federally protected rights under the ADA, Mr. Howell seeks nominal, compensatory, and punitive damages to compensate him for harm inflicted by Defendants. Mr. Howell seeks backpay with pre- and post-judgment interest, front pay, reimbursement for lost benefits, compensation for emotional distress, and repayment of his attorneys' fees and litigation costs and expenses.

## COUNT III
## FAILURE TO ACCOMMODATE
## AGAINST BOTH DEFENDANTS
## [ADA, 42 U.S. Code § 12101 *et seq.*]

86. Mr. Howell incorporates by reference paragraphs 11 to 54 above.

87. The ADA states that "the term 'discriminate against a qualified individual on the basis of disability' includes— . . . not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S. Code § 12112(b)(5)(A).

88. Mr. Howell requested a reasonable accommodation: to be rotated to less than 100% of the machines in the Miscellaneous II department.

89. The essential functions of Mr. Howell's job in the Miscellaneous II department were to produce Rubbermaid products using certain production machines.

90. Mr. Howell could still perform the essential functions of his job despite not being able to rotate to 100% of the Miscellaneous II department machines.

91. Defendants initially granted his accommodation request during November and December 2021.

92. Accommodating Mr. Howell was not an undue burden, as Defendants had accommodated Mr. Howell for over two (2) months.

93. In January 2022, Defendants revoked Mr. Howell's accommodation and required him to submit three superfluous rounds of medical records to support his request for a reasonable accommodation. Mr. Howell immediately complied and submitted his reasonable accommodation request paperwork.

94. Within four (4) hours after Mr. Howell submitted his reasonable accommodation request paperwork, Newell denied his accommodation request.

95. Defendants failed to engage in the interactive process with Mr. Howell. Defendants had no discussions with Mr. Howell to ascertain what accommodations could be offered which would enable Mr. Howell to continue to perform the essential functions of his position.

96. Defendants did not offer to move Mr. Howell to the Miscellaneous I department—where the products being manufactured were lighter and/or smaller than those manufactured in the Miscellaneous II department.

97. Nor did Defendants offer to move Mr. Howell to another department—where products even smaller and lighter than those manufactured in the Miscellaneous I department were manufactured.

98.     Instead of engaging in the interactive process with Mr. Howell, Defendants summarily denied Mr. Howell's accommodation request within four (4) hours of receiving his accommodation request paperwork.

99.     As an actual and proximate cause of Defendants' conduct, Mr. Howell has suffered physical injury, emotional distress, embarrassment, humiliation, and lost wages and benefits.

100.    Due to Defendants' intentional disregard of Mr. Howell's federally protected rights under the ADA, Mr. Howell seeks nominal, compensatory, and punitive damages to compensate him for harm inflicted by Defendants. Mr. Howell seeks backpay with pre- and post-judgment interest, front pay, reimbursement for lost benefits, compensation for emotional distress, and repayment of his attorneys' fees and litigation costs and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Blake Howell, respectfully requests that this Honorable Court enter judgment in his favor on all Counts of his Complaint and against Defendants Newell Brands Industries, LLC and Spherion Staffing, LLC and that he be awarded the following relief:

(a)     Entry of judgment in favor of Mr. Howell on all Counts;

(b)     Award of reinstatement or front pay;

(c)     Award of back pay for Plaintiff against Defendants;

(d)     Award of compensatory damages for Plaintiff against Defendants;

(e)     Award of punitive damages for Plaintiff against Defendants;

(f)     Award of reasonable attorneys' fees and litigation costs and expenses for Plaintiff against Defendants;

(g)     Award of pre- and post-judgment interest for Plaintiff;

(h)     Any other relief that this Court deems equitable, appropriate, and just.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

*/s/Francisco E. Mundaca*_____
Francisco E. Mundaca (VSB #96073)
THE SPIGGLE LAW FIRM, P.C.
3601 Eisenhower Ave., Suite 425
Alexandria, Virginia 22304
Phone: (202) 449-8527
Facsimile: (202) 517-9179
Email: fmundaca@spigglelaw.com

***Counsel for the Plaintiff, Blake Howell***